STUTZENBAKER *v.* ARKANSAS POWER & LIGHT COMPANY.

4-3007

Opinion delivered May 8, 1933.

*A. G. Meehan* and *John W. Moncrief,* for appellant.

*House & Moses* and *Ingram & Moher,* for appellee.

SMITH, J. Mrs. Mae Stutzenbaker owned a house in the city of Stuttgart, which she occupied as her home. She rented certain of the rooms to other occupants. This building was partially destroyed by fire on February 20, 1932, which also damaged the furniture and furnishings belonging to all the occupants of the house. Suit was brought by all of the occupants for the damage thus caused against the Arkansas Power & Light Company, it being alleged that the fire was the result of the negligence of the defendant in the manner hereinafter discussed. From a verdict and judgment in favor of the defendant is this appeal.

The building had been wired for electricity by a contractor employed by Mrs. Stutzenbaker, who owned and used several electrical appliances in the house, including a cook stove. The light company contracted to furnish electric current for use in the house and had made electrical connections with it. The plaintiffs decided to move from the house, and notified the light company to

discontinue service and to disconnect the wires from the stove so that it might be removed.

The house—a frame dwelling—faces north on West Fourth Street. In the rear of the house is an alley which runs east and west. In order to furnish electrical service to the house, a pole was located in the alley, and from this pole three wires ran to the house and were fastened to the rear or south side thereof by means of porcelain knobs. One of these wires is known as a 220-volt wire, and the other two are known as 110-volt wires. The 220-volt wire entered the house through a piece of iron pipe an inch in diameter. This conduit through which that wire entered the house was located at a point opposite a switch box on the south wall of the kitchen, and the stove meter was directely below the switch box. From the bottom of the switch box the wires, inclosed in a flexible cable about 1⅛ inches in circumference, led to the electric stove. On the outside south wall of the house was located a light meter near a point where the wires extending from the pole reached the house. This meter was installed in a rectangular box built in the wall. The light service wires entered the wall through two porcelain tubes immediately above the box containing the meter, and the wiring from the porcelain tubes to the meter is concealed in the wall. This wiring and the box were the property of Mrs. Stutzenbaker, and were installed by her. From the porcelain tubes the light wires come out of the wall and connect to two of the wires supplying current to the stove. The two wires to which the light wires are connected are known as 110-volt wires, and this connection and the other wiring in the house were installed by Mrs. Stutzenbaker's contractor.

In response to the direction to discontinue service, an electrician employed by the light company went to the house at about 8:30 on the morning of the fire, and he first pulled the stove switch in the box on the wall. He did this for his own safety, and when the switch was pulled the current to the stove was shut off. The electrician then cut the 220-volt wire six inches from the knob, and he testified that he wrapped the short end so cut around the porcelain knob on the outside of the house.

Whether the short end was wrapped around the porcelain knob is one of the disputed questions of fact in the case. The electrician testified that he cut the remaining two 110-volt wires immediately below the connection which Mrs. Stutzenbaker's contractor had made and taped the ends of both wires. He further testified that he then removed the conduit from the wall and taped the ends, and he then cut the wires below the switch box which served the electric stove, and Mr. Stutzenbaker moved the stove out from the wall. The electrician further testified that, when the wires were cut below the switch, this completely eliminated any current to the stove, and he then took off the lock nuts, which fastened one end of the conduit to the switch box, and removed the conduit and wires entirely, and removed the switch box from the wall. This left no wires whatever inside of the house which led to the stove. He testified that, before leaving the premises, he went out in the alley and cut the 220-volt wire off a few inches from the pole 160 feet from the house, and wrapped it back around a porcelain knob on the pole. This left only the 112-volt lighting service to the house, which was fed from the remaining two service wires coming from the porcelain knobs down to the wires and the connection made by appellants' contractor. According to the testimony on the part of the plaintiffs, the wires were not cut at the pole until after the fire had occurred and been extinguished.

After the electrician left, Mr. Stutzenbaker carried away the stove, the wires, the switch box and the conduit entrance used in connection with the stove. There was left in the house a new oil cook stove, which had been brought there only a day or so before the fire, but the oil cook stove had not been put in use according to the testimony of the plaintiffs, and contained no oil. Smoke coming from the house was discovered about 11 A. M. of the same day, and, before the fire causing it could be extinguished, the damage had been done, for which the plaintiffs sue.

Certain pictures offered in evidence and other testimony in the case leave little doubt as to the point of origin of the fire. Mrs. Wilson, the first witness to see

the fire, testified that the blaze first appeared near a point where the two light wires entered the building. The fire chief testified that in his judgment the fire originated on the inside of the kitchen where Mrs. Wilson saw the first blaze coming out. There was in the west wall at this point a 2 x 4 studding, which was burned nearly in two. McConnell, the first person to enter the house, testified that as he went into the kitchen the three wires extending from the pole to the house were still up, and immediately after he had passed under them, two of the three wires came loose from their anchorage to the house and fell to the ground, and, to prevent further contact, this witness pulled the down portion of one of the wires away from the down portion of the other wire. Witness Estes, who came up to the rear of the house immediately following McConnell, observed the two down wires, and testified that the insulation substance on them had burned for some distance toward the pole.

Appellants state their theory of the case as follows: When the electrician cut the three wires loose from the stove, he did so at a point some distance below where the two extensions entered the house near the west door top, thus leaving them loose and with their ends naked. A considerable wind was blowing and two of the three wires formed a short circuit so that they dropped loose from their fastenings some 14 or 15 feet away from the location of the wires, this being evidenced by the fact that the insulation burned off these two wires some distance towards the pole.

The court submitted the case to the jury under instructions declaring the law to be that, if the defendant's electrician by disconnecting the wires from the stove had left them uninsulated, and had so cut the wires as to leave them near enough each other for the dangling ends to be brought or blown together, thereby producing a short circuit and causing the fire, and this was negligence, then the defendant was liable for the damages thus occasioned.

This instruction appears to correctly submit the controlling question of fact, and the verdict of the jury in defendant's favor would be conclusive of the case if

other instructions had not been given which we think are erroneous.

Instruction numbered 2 reads as follows: "You are instructed that, if you find from the evidence that the fire originated inside of the building of the plaintiff, then your verdict should be for defendant company." This instruction is peremptory in its nature, as the testimony appears to be undisputed that the fire originated inside of the house. If the fire was caused by cutting the wires and leaving their ends untaped, so that a short circuit might be and was formed as a result of that action, it would be immaterial where the fire originated. The defendant would be responsible for the result of its negligence, if it were negligent, wherever the vagaries of the electric current manifested the negligence.

There were six plaintiffs in the case, and in an instruction numbered 12 the court stated the damages for which each had sued. This instruction was concluded with the following declaration of law: "You are instructed that each plaintiff would have to make out his or her own case, and you are further instructed that you cannot find for one plaintiff merely because one or more of the plaintiffs, in your judgment, might be entitled to a verdict. The burden of proof is upon each plaintiff to make out his own or her own case by a preponderance of the testimony." The part of the instruction above copied was erroneous. Several of these plaintiffs offered no testimony as to the origin of the fire, although there was testimony as to the damages which the plaintiffs had severally sustained. If there was liability as to any one of the plaintiffs, there was liability as to all. If any one of them was entitled to be compensated, all of them were; and if the testimony on the part of one or more of the plaintiffs established liability, the others were entitled to the benefit of that testimony, although they may have had no knowledge as to the cause of the fire and had offered no testimony on that subject.

For the error in giving instructions numbered 2 and 12, set out above, the judgment must be reversed, and the cause will be remanded for a new trial.